Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:     516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEAN DUGAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CASTLE BRANDS, INC., MARK E. ANDREWS, JOHN F. BEAUDETTER, HENRY C. BEINSTEIN, DR. PHILLIP FROST, DR. RICHARD M. KRASNO, RICHARD J. LAMPEN, STEVEN D. RUBIN and MARK ZEITCHICK,<br><br>Defendants. | Case No.:<br><br>CLASS ACTION<br><br>CLASS ACTION COMPLAINT FOR:<br>(1)  Violation of § 14 (d) and 14(e) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br>(3)  Breach of Fiduciary Duties<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Sean Dugan ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff brings this stockholder class action on behalf of themselves and all other public stockholders of Castle Brands, Inc. ("Castle Brands" or the "Company"), against Castle Brands, and the Company's Board of Directors (the "Board" or the "Individual Defendants, and collectively with Castle Brands, the "Defendants"), for violations of Sections 14(e), 14(d) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), for breaches of fiduciary

duty as a result of Defendants' efforts to sell the Company as a result of an unfair process for an unfair price, and to enjoin a Tender Offer by which Austin, Nichols & Co., Inc., a Delaware corporation and affiliate of Pernod Ricard S.A. ("Parent"), and Parent's newly-formed subsidiary, Rook Merger Sub, Inc., a Florida corporation ("Merger Sub") (collectively, "Pernod") will acquire each outstanding share of Castle Brands common stock for $1.27 per share in cash (the "Proposed Transaction").

2.       The terms of the Proposed Transaction were memorialized in an August 28, 2019 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Agreement and Plan of Merger (the "Merger Agreement").

3.       On September 9, 2019, Castle Brands filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "14D-9") with the Securities and Exchange Commission (the "SEC") in support of the Proposed Transaction.

4.       Defendants breached their fiduciary duties to the Company's shareholders by agreeing to the Proposed Transaction which undervalues Castle Brands and is the result of a flawed sales process.  Post-closure, Castle Brands shareholders will be frozen out of seeing the return on their investment of any and all future profitability of Castle Brands.

5.       Further, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange large, illiquid blocks of Company stock for massive payouts, in addition to receiving cash in exchange for all outstanding and unvested options and/or other types of restricted stock units.  Moreover, certain Directors and other insiders will also be the recipients of lucrative change-in-control agreements, triggered upon the termination of their employment as a consequence of the consummation of the Proposed Transaction.

6.       Finally, in violation of sections 14(e) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and their fiduciary duties, Defendants caused to be filed the materially deficient 14D-9 on September 9, 2019 with the SEC in an effort to solicit stockholders to tender their Castle Brands shares in favor of the Proposed Transaction.  The 14D-9 is materially deficient and deprives Castle Brands stockholders of the information they need to make an

intelligent, informed and rational decision of whether to tender their shares in favor of the Proposed Transaction.   As detailed below, the 14D-9 omits and/or misrepresents material information concerning, among other things: (a) the Company's financial projections; (c) the sales process of the Company; and (c) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisors Perella Weinberg Partners LP ("Perella Weinberg") and Houlihan Lokey Capital, Inc. ("Houlihan Lokey").

7.      Absent judicial intervention, the merger will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## PARTIES

8.      Plaintiff is a citizen of the Commonwealth of Pennsylvania.  He is, and at all times relevant hereto, has been a Castle Brands stockholder.

9.      Defendant Castle Brands together with its subsidiaries, develops, markets, imports, and sells beverage alcohol and non-alcoholic beverage products in the United States, Canada, Europe, and Asia. The Company is incorporated in the state of Florida and has a principal place of business located at 122 East 42nd Street, New York, New York.  Castle Brands common stock is publicly traded on the NYSE under the ticker symbol "ROX."

10.      Defendant Mark Andrews, III ("Andrews") has been a member of the Castle Brands Board of Directors at all relevant times. He founded the predecessor company, Great Spirits Company LLC, in 1998 and served as its chairman of the board, president and chief executive officer from its inception until December 2003. He has served as chairman of the board since December 2003 and served as president from December 2003 until November 2005. He also served as chief executive officer from December 2003 until November 2008.   He owns over 4.9 million shares of the Company's stock, approximately 3% of all outstanding shares. Andrews also has an employment agreement with the Company.

11.      Defendant John F. Beaudette ("Beaudette") has been a member of the Castle Brands Board of Directors since 2004.

12.     Defendant Henry C. Beinstein ("Beinstein") has been a member of the Castle Brands Board of Directors since 2009.

13.     Defendant Phillip Frost ("Frost") has been a member of the Castle Brands Board of Directors since 2008.  He, along with related entities, is the largest shareholder of the Company, holding, as of September 9, 2019, over 54 million shares, representing approximately 30% of the outstanding shares.

14.     Defendant Richard M. Krasno ("Krasno") has been a member of the Castle Brands Board of Directors since 2015.

15.     Defendant Richard J. Lampen ("Lampen") has been a member of the Castle Brands Board of Directors, as well as President and CEO since 2008. As of September 9, 2019, he holds over 3.8 million shares of the Company.

16.     Defendant Steven D. Rubin ("Rubin") has been a member of the Castle Brands Board of Directors since 2009.

17.     Defendant Mark Zeitchick ("Zeitchick") has been a member of the Castle Brands Board of Directors since 2014.

18.     Defendants identified in ¶¶ 10-17 are collectively referred to as the "Individual Defendants."

19.     Non-Party Austin, Nichols & Co., Inc. is a Delaware corporation and a party to the Merger Agreement.

20.     Non-Party Pernod is a French Corporation listed by Euronext Paris.

21.     Non-Party Merger Sub is a Florida Corporation formed for the purpose of effectuating the Merger Agreement.

**JURISDICTION AND VENUE**

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

23.     Personal jurisdiction exists over each defendant either because the defendant

conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Castle Brands' principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Castle Brands common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

26.     This action is properly maintainable as a class action because:

    a.   The Class is so numerous that joinder of all members is impracticable.  As of September 9, 2019, there were more than 170 million common shares of Castle Brands' outstanding.  The actual number of public stockholders of Castle Brands will be ascertained through discovery;

    b.   There are questions of law and fact which are common to the Class, including *inter alia*, the following:

        i.   Whether Defendants have violated the federal securities laws;

        ii.   Whether Defendants made material misrepresentations and/or omitted material facts in the 14D-9; and

        iii.   Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.  Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES**

27.  By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Castle Brands and owe the Company the duties of due care, loyalty, and good faith.

28.  By virtue of their positions as directors and/or officers of Castle Brands, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Castle Brands to engage in the practices complained of herein.

29.  Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

**CLASS ACTION COMPLAINT**

a. act with the requisite diligence and due care that is reasonable under the circumstances;

b. act in the best interest of the company;

c. use reasonable means to obtain material information relating to a given action or decision;

d. refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

e. avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

f. disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

30.   In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Castle Brands, are obligated to refrain from:

a. participating in any transaction where the directors' or officers' loyalties are divided;

b. participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public shareholders; and/or

c. unjustly enriching themselves at the expense or to the detriment of the Company or its shareholders.

31.   Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Castle Brands, Plaintiff and the other public shareholders of Castle Brands, including their duties of loyalty, good faith, and due care.

CLASS ACTION COMPLAINT

32.     As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Castle Brands common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

33.     Castle Brands together with its subsidiaries, develops, markets, imports, and sells beverage alcohol and non-alcoholic beverage products in the United States, Canada, Europe, and Asia.

34.     Fiscal year 2019 proved to mark "an important turning point for the company," according to its Fiscal 2019 press release.

35.     Speaking on these positive results, Company President and CEO Lampen spoke positively about the Company's financial plan and its positive implementation, stating, "This was an outstanding year for Castle Brands. Continued growth of our more profitable brands, such as Jefferson's, Goslings and Knappogue Irish whiskey, resulted in continued growth in revenue and gross profit. Importantly, we reported positive net income per share for the fiscal year for the first time in the Company's history and had a record level of EBITDA, as adjusted. We have approximately $49.5 million in available net loss carryforwards. In the past, accounting practices did not ascribe any value to these NOLs because it was not clear that they would be used. Increasing profitability of our 80.1% owned Gosling Castle Partners subsidiary and revised forecasts for the Company's overall financial performance caused the NOLs to be valued at approximately $9.6 million, which resulted in a commensurate increase in net income. We expect the strong growth in Jefferson's to continue to drive our long-term trends of increasing sales and improving financial performance."

36.     These recent financial results are just the latest results showcasing a trend of financial success for Castle Brands, as evidenced by the Company's quarter ended March 31, 2019. According to the Company's press release, "In the fourth quarter of fiscal 2019, the Company had net sales of $26.9 million, an 11.7% increase over net sales of $24.1 million in the comparable prior-year period. Income from operations was $2.9 million, a 109.4% increase over income from

1  operations of $1.4 million in the comparable prior-year period. Income from operations in the

2  current fiscal year benefitted from $1.0 million in rebates on excise taxes as a result of the Craft

3  Beverage Modernization and Tax Reform Act of 2017. Net income was $11.2 million in the fourth

4  quarter of fiscal 2019 compared to net income of $0.2 million in the comparable prior-year period,

5  largely the result of a $9.5 million adjustment to deferred tax assets. Net income attributable to

6  common shareholders was $9.0 million, or $0.05 per basic and diluted share, in the fourth quarter

7  of fiscal 2019, as compared to a net loss attributable to common shareholders of ($0.3) million, or

8  ($0.00) per basic and diluted share, in the comparable prior-year period."

9      37.    Despite this upward trajectory and glowing pronouncements by management,

10  success, the Individual Defendants have caused Castle Brands to enter into the Proposed

11  Transaction, thereby depriving Plaintiff and other public stockholders of the Company the

12  opportunity to reap the benefits of Castle Brands' present and future success.

13  ***The Proposed Transaction***

14      38.    On August 28, 2019, Castle Brands and Pernod issued a press release announcing

15  that Castle Brands had agreed to be acquired by Pernod in the Proposed Transaction.  The press

16  release states in relevant part:

17  PARIS and NEW YORK – August 28, 2019 – Pernod Ricard (Euronext Ticker RI;
18  ISIN Code: FR0000120693) and Castle Brands Inc. (NYSE American: ROX),
    today announced that they have entered into a definitive agreement under which
19  Pernod Ricard, through a subsidiary, will acquire all of the outstanding common
    stock of Castle Brands for $1.27 per share in cash, or approximately $223 million,
20  plus the assumption of debt, through a cash tender offer followed by a merger.

21   Under the terms of the merger agreement, which has been unanimously approved
    by the Castle Brands Board of Directors, Castle Brands shareholders will receive
22  $1.27 in cash for each outstanding share of Castle Brands common stock they own,
    representing a 92% premium to Castle Brands' closing share price on August 27,
23  2019, and a 109% premium to the 30-day volume weighted average share price
    through such date.

24   Alexandre Ricard, Chairman and Chief Executive Officer of Pernod Ricard, stated,
25  "Through this acquisition we welcome this great brand portfolio, in particular,
    Jefferson's bourbon whiskey, to the Pernod Ricard family. Bourbon is a key
26  category in the US which is our single most important market. This deal aligns well
    with our consumer-centric strategy to offer our consumers the broadest line-up of
27  high-quality premium brands. As with our American whiskies Smooth Ambler,
    Rabbit Hole and TX, we would provide Jefferson's a strong route to market and
28  secure its long-term development, while remaining true to its authentic and
    innovative character."

"We are very pleased to reach an agreement with Pernod Ricard, which is the result of months of planning and deliberation by our Board of Directors," said Richard J. Lampen, President and Chief Executive Officer of Castle Brands. "We are confident that this transaction, upon closing, will deliver immediate and substantial cash value to our shareholders."

The merger agreement provides for a cash tender offer to acquire all outstanding shares of Castle Brands to be launched shortly. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of Castle Brands' outstanding shares, early termination or expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, and other customary conditions. Once the tender offer is successfully completed, Pernod Ricard will acquire all shares not acquired in the tender offer through a second-step merger in which the holders of the outstanding shares of Castle Brands common stock not tendered in the offer will receive the same per share price paid in the tender offer, in cash. The transaction is expected to close in the fourth quarter of 2019.

BofA Merrill Lynch acted as financial advisor to Pernod Ricard and Debevoise & Plimpton LLP acted as its legal advisor. Perella Weinberg Partners and Houlihan Lokey acted as financial advisors to Castle Brands, Holland & Knight LLP acted as Castle Brands' legal advisor, and Sullivan & Cromwell LLP acted as legal advisor to Castle Brands' financial advisors.

***The Inadequate Merger Consideration***

39.     Significantly, analyst expectations, the Company's strong market position, extraordinary growth, and positive future outlook, establish the inadequacy of the merger consideration.

40.     "In addition to continued sales growth and containment of expenses, we expect that three other factors will contribute to improved financial performance in fiscal 2020. First, our new debt structure should result in approximately $1.5 million in interest savings. Second, we expect to begin using our bourbon new-fill, which has matured, and which should substantially reduce our COGS and increase Jefferson's brand contribution. Third, we expect to benefit from reduced federal excise tax expense by over $1 million because of the recently enacted Craft Beverage Modernization and Tax Reform Act," stated Alfred J. Small, Senior Vice President and Chief Financial Officer.

41.     Moreover, post-closure, Castle Brands stockholders will be completely cashed out from any and all ownership interest in the Company, forever foreclosing them from receiving any future benefit in their investment as Castle Brands continues on its upward financial trajectory.

42.     Pernod has been situating itself to purchase the Company for a number of years.

43.     In 2015, Castle Brands sought to fight off an incursion by Pernod into its business when it filed a trademark infringement suit against Pernod relating to allegations that Pernod had infringed on the Company's "Dark N Stormy™" trademark. The parties settled their differences out of court.

44.     Pernod's efforts to acquire the Company date back to at least 2017, when the Company's financial advisor, Perella Weinberg, raised the possibility of Pernod's interest in acquiring Castle Brands.

45.     While the parties came close to a deal in late 2018 at a price per share of $1.48 (and the inclusion of an entity named "Company Three" in the 14D-9), Company Three apparently backed out of the deal, prompting Castel Brands to terminate the process, even though Company One was still performing due diligence.

46.     Notably, the Company terminated the engagement letter with Perella Weinberg at the same time – December 2018; however, review of the 14D-9 indicates, without adequate disclosure, that Perella Weinberg continued to take part in meetings and the strategic alternative process in early 2019 and through the deal with Pernod.

47.     As set forth below, Perella Weinberg had a clear conflict of interest from at least the fall of 2018 because there was a clear conflict of interest.  Pernod had retained Perella in the "fall of 2018" to "to independently advise Pernod Ricard regarding the possible disposition of a brand that is unrelated to the potential acquisition of the Company by Pernod Ricard."

48.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Pernod at the expense of Castle Brands and Castle Brands stockholders, which clearly indicates that Castle Brands stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Potential Conflicts of Interest***

49.     The deal itself was likely also tainted by the self-interest of the Individual Defendants.

50.     For example, certain employment agreements with several Castle Brands officers or directors are entitled to severance packages should their employment be terminated under

certain circumstances.  These packages are significant, and will grant each director or officer entitled to them at the very least, hundreds of thousands of dollars, compensation not shared by Castle Brands' common stockholders.

51.     The following table sets forth the compensation for certain Castle Brands directors and officers, as well as their estimated value payable:

| Golden Parachute Compensation | | | | |
|---|---|---|---|---|
| Executive Officer | Severance Payment ($)(1) | Value of Health Benefits ($)(2) | Benefit of Acceleration for Vesting of Stock Options and Restricted Stock Awards ($)(3) | Total($) |
| Richard J. Lampen | 515,000 | — | 55,500 | 570,500 |
| Alfred J. Small | 815,474 | 62,928 | 275,675 | 1,154,077 |
| John S. Glover | 1,020,608 | 44,160 | 401,538 | 1,466,306 |
| T. Kelley Spillane | 886,796 | 62,928 | 275,675 | 1,225,399 |
| Alejandra Peña | 298,850 | 26,448 | 230,038 | 555,336 |

52.     It is no wonder that given the extremely lucrative profits for themselves, the Board allowed the Company to be sold far under its proper value in order to secure a quick sale.

53.     Thus, while the Proposed Transaction is not in the best interests of Castle Brands' stockholders, it will produce lucrative benefits for the Company's officers and directors.

***Perella Weinberg's Conflicts of Interest***

54.     Perella Weinberg had a clear conflict of interest and should not have been permitted to opine on the fairness of the Proposed Transaction.  The after the fact retention of Houlihan Lokey to provide a fairness opinion provided no cleansing effect on the process.

55.     The 14D-9 provides a small amount of information regarding the conflict; however, the brevity and vagueness of the explanation raises more questions than answers.

56.     First, the 14D-9 indicates that the Board determined to terminate the engagement with Perella Weinberg on or about December 10, 2018.

57.     Next, the 14D-9 indicates that in April 2019, Perella Weinberg was involved in discussions with Pernod regarding a possible transaction to purchase the Company. The 14D-9 is silent as to the work performed by Perella Weinberg with respect to a possible deal between December 10, 2018 and April 2019.

CLASS ACTION COMPLAINT

58.     The 14D-9 indicates that in late July 2019, seven months after the engagement with Perella Weinberg was allegedly terminated, and at least three months after Perella Weinberg was engaging with Pernod on "behalf" of the Company.

59.     The 14D-9 states, "In the last week of July 2019, the Company's management was advised by representatives of Perella Weinberg it had been retained by Pernod Ricard after the "termination of the process in the Fall of 2018 and before the process resumed in 2019 to independently advise Pernod Ricard regarding the possible disposition of a brand that is unrelated to the potential acquisition of the Company by Pernod Ricard. As a result, the Board determined it would authorize the Company's management to re-engage Perella Weinberg as its financial advisor and also engage another financial advisor. The Company engaged Houlihan Lokey Capital, Inc. ("Houlihan") as a second financial advisor."

60.     Significantly, the 14D-9 fails to disclose any adequate detail to understand the extent of the conflict. For example, the 14D-9 specifically states that the engagement was not initially terminated until at least December 10, 2018; however only paragraphs later, the 14D-9 refers to the timing of Pernod's retention of Perella Weinberg as being "termination of the process in the Fall of 2018 and before the process resumed in 2019."

61.     Not surprisingly, only days after the revelation by Perella Weinberg, Pernod submitted a Letter of Intent ("LOI") to purchase the Company for $1.25 a share, significantly less than the $1.48-$1.53 price that was being negotiated as late as November 30, 2018.

***The Materially Misleading and Incomplete 14D-9***

62.     On September 9, 2019, the Board caused to be filed with the SEC a materially misleading and incomplete 14D-9 that, in violation of their fiduciary duties and federal law, failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process*
*Leading Up to the Proposed Transaction*

63.    Specifically, the 14D-9 fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the 14D-9 fails to disclose:

      a.    The nature of any specific standstill restrictions arising out of the terms of any of the non-disclosure agreements entered into between Castle Brands on the one hand and any interested third party (other than Pernod), on the other, and if the terms of any included "don't-ask, don't-waive" provisions or standstill provisions in any such agreements, and if so, the specific conditions, if any, under which such provisions would fall away;

      b.    The nature of any differences that exist between the various non-disclosure agreements entered into between Castle Brands and any interested third parties;

      c.    The reason(s) that Perella Weinberg retained counsel in 2017 in connection with a potential strategic transaction involving the Company;

      d.    The reason why the Goslings will receive a $4 million payment when the deal closes rather than such payment being made to the Company's shareholders; and

      e.    The basis for compensating Perella Weinberg fully and the necessity to retain Houlihan Lokey due to the failure of Perella Weinberg to disclose the conflict it had based on its retention by Pernod.

*Omissions and/or Material Misrepresentations Concerning Castle Brands' Financial*
*Projections*

64.    The 14D-9 fails to provide material information concerning financial projections provided by Company management and relied upon by Perella Weinberg and Houlihan Lokey in their analyses.  The 14D-9 discloses management-prepared financial projections for the Company which are materially misleading.  The 14D-9 indicates that in connection with the rendering of the Perella Weinberg fairness opinion, Perella Weinberg "reviewed the Company Forecasts, estimated

federal net operating loss carryforwards ("NOLs") and other financial and operating data relating to the business of the Company, in each case, prepared by management of the Company and, with respect to the NOLs, its tax advisor." As to Houlihan Lokey, the 14D-9 states that it "reviewed certain information relating to the historical, current and future operations, financial condition and prospects of the Company made available to Houlihan Lokey by the Company, including (a) the Company Forecasts, and (b) estimated federal net operating loss carryforwards prepared by management of the Company and its tax advisor relating to the Company on a standalone basis (the "NOLs")."

65.     Accordingly, the 14D-9 should have, but fails to provide, certain information in the projections that Castle Brands management provided to the Board and both financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

66.     The 14D-9 provides non-GAAP financial metrics, including EBITDA and CAMP, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics. Also, the 14D-9 fails to reconcile Unlevered Free Cash Flow ("UFCF") to its most comparable GAAP measure. Additionally, the 14D-9 fails to disclose the line items utilized to calculate the non-GAAP metrics of CAMP, EBITDA and UFCF.

67.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

68.     Without accurate projection data presented in the 14D-9, Plaintiff and other stockholders of Castle Brands are unable to properly evaluate the Company's true worth, the accuracy of the financial analyses, or make an informed decision whether to vote their Company

stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the 14D-9.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Perella Weinberg*

69.    In the 14D-9, Perella Weinberg describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

70.    With respect to Perella Weinberg's *Selected Transaction Analysis*, the 14D-9 fails to disclose the following:

     a.  Why four (4) transactions involving Pernod were utilized even though the analysis derived no multiples;

     b.  The basis for the application of multiples of 3.0x – 4.5x to LTM Net Sales and 9.0x-13.0x to LTM CAMP.

71.    With respect to Perella Weinberg's *Sum of the Parts Analysis*, the 14D-9 fails to disclose the following:

     a.  The specific inputs and assumptions used to calculate LTM CAMP.

72.    With respect to Perella Weinberg's *Discounted Cash Flow Analysis*, the 14D-9 fails to disclose the following:

     a.  The specific inputs and assumptions used to calculate the discount rate range of 10% to 13%;

     b.  The specific inputs and assumptions used to calculate terminal value range of 14.0x-18.0x;

     c.  The stock-based compensation utilized; and

     d.  The number of fully-diluted outstanding shares.

73.    These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

74.     Without the omitted information identified above, Castle Brands' public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Castle Brands' public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.  As such, the Board has breached their fiduciary duties by failing to include such information in the 14D-9.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Houlihan Lokey*

75.     In the 14D-9, Houlihan Lokey describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

76.     With respect to Houlihan Lokey's *Discounted Cash Flow Analysis*, the 14D-9 fails to disclose the following:

> a.   The specific inputs and assumptions used to calculate the discount rate range of 11.5% to 14.5%;
>
> b.   The specific inputs and assumptions used to calculate terminal value range of 14.0x-20.0x;
>
> c.   The stock-based compensation utilized; and
>
> d.   The number of fully-diluted outstanding shares.

77.     These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

78.     Without the omitted information identified above, Castle Brands' public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Castle Brands' public stockholders cannot gauge

the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in their best interests.  As such, the Board has breached their fiduciary duties by failing to include such information in the 14D-9.

**FIRST COUNT**

**Claim for Breach of Fiduciary Duties**

**<u>(Against the Individual Defendants)</u>**

79.     Plaintiff repeats all previous allegations as if set forth in full herein.

80.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiffs and the Company's public shareholders.

81.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Castle Brands.

82.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the shareholders of Castle Brands by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Castle Brands to its public shareholders.

83.     Indeed, Defendants have accepted an offer to sell Castle Brands at a price that fails to reflect the true value of the Company, thus depriving shareholders of the reasonable, fair and adequate value of their shares.

84.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed vote on whether to approve the Merger.

85.     The Individual Defendants dominate and control the business and corporate affairs of Castle Brands, and are in possession of private corporate information concerning Castle Brands' assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Castle Brands which makes it

inherently unfair for them to benefit their own interests to the exclusion of maximizing shareholder value.

86.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

87.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Castle Brands' assets and have been and will be prevented from obtaining a fair price for their common stock.

88.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

89.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Violations of Section 14(e) of the Exchange Act

### (Against All Defendants)

90.     Plaintiff repeats all previous allegations as if set forth in full herein.

91.     Defendants have disseminated the 14D-9 with the intention of soliciting stockholders to tender their shares in favor of the Proposed Transaction.

92.     Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

93.      The 14D-9 was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above.

Moreover, in the exercise of reasonable care, Defendants knew or should have known that the 14D-9 is materially misleading and omits material facts that are necessary to render them non-misleading.

94.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

95.     The Individual Defendants were at least negligent in filing a 14D-9 that was materially misleading and/or omitted material facts necessary to make the 14D-9 not misleading.

96.     The misrepresentations and omissions in the 14D-9 are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

### THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

97.     Plaintiff repeats all previous allegations as if set forth in full herein.

98.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the 14D-9 was materially misleading to Company stockholders.

99.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the 14D-9 and nevertheless approved, ratified and/or failed

to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the 14D-9.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the 14D-9 before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

100.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Castle Brands' business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the 14D-9 was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the 14D-9 and are therefore responsible and liable for the misrepresentations contained herein.

101.    The Individual Defendants acted as controlling persons of Castle Brands within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Castle Brands to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Castle Brands and all of its employees.  As alleged above, Castle Brands is a primary violator of Section 14 of the Exchange Act and SEC Rule 14d-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and in favor of the Class, and against the Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining the Proposed Transaction;

C.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.   Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.   Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Castle Brands and obtain a transaction which is in the best interests of Castle Brands and its shareholders;

F.   Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.   Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 13, 2019

**BRODSKY & SMITH, LLC**

Evan J. Smith
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:   516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT